EVERETT *et al. v.* DUCKWORTH *et al.*

(Division B. Oct. 18, 1937.)

[176 So. 387. No. 32833.]

**Austin & Austin,** of Jackson, for appellants.

**W. M. Lofton**, of Mendenhall, for appellees.

Argued orally by **B. Galloway Austin**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellants, C. H. Everett and D. A. Everett, doing business under the firm name of Everett Hardware Company, obtained judgment against J. R. Patrick, principal, for $131.50, and against the sureties on his bond, W. S. Jones and J. I. Brown, for $62.50 and costs amounting to $14, making a total of $76.55 against the sureties. Execution was issued upon this judgment on September 11, 1935, returnable to the chancery court of Simpson county on the second Monday of November, 1935. The sheriff, D. W. Duckworth, made the following return;—

''I have this day executed the within writ by collecting from J. I. Brown, surety, the sum of $62.50 and $16.05

cost with $3.81 interest, total of $82.36, and paid same to J. D. Smith, Chancery Clerk, this deferred payment being an agreement by telephone between Mr. Everett and me. Nothing found of W. S. Jones and J. R. Patrick to levy on. This Dec. 4, 1935. D. W. Duckworth, Sheriff."

Appellants moved to collect the balance due them, claiming that on February 14, 1935, they obtained a decree against Patrick and his sureties, after which execution for the full amount of the decree and cost was placed in the hands of the sheriff, Duckworth, in ample time for him to collect the money and make due return on or before the return day, but that he failed so to do, and appellants moved that Duckworth and his bondsmen be required to pay the amount of $66.50 with 5 per cent. interest since February 14, 1935, and 5 per cent. damages as provided for by section 3317, Code 1930.

Appellees answered admitting that there was a decree in favor of appellants against Patrick and his bondsmen for $131.50 and costs, but denied that they were bound thereby; that an execution had been issued and placed in the hands of the sheriff, Duckworth, but denied that there was any property of J. R. Patrick, W. S. Jones, and J. I. Brown out of which said execution could have been made, and further answered the motion by saying that while said execution was not returned until December 4, 1935, after the return day, this deferred return was made in accordance with a telephone conversation between Duckworth, sheriff, and Mr. Everett, and that as a result the appellants suffered no injury, since the return shows that $82.36 was realized on the execution, which covers all that the sheriff was directed to collect from the sureties. They denied that the surety of Patrick, the National Surety Corporation, ever assumed any liability on the original bond made by the National Surety Company, and that they are not liable, under section 3317, Code 1930, for 5 per cent. damages.

On the hearing, evidence for appellants was produced

showing that the sheriff was not directed or requested to hold up the execution; that there had been no telephone conversation between the sheriff and appellants prior to the date of the return of the execution, and that the only conversations had with him were subsequent thereto, in which appellants had asked him to send their money.

The sheriff, Duckworth, testified that he received the execution and turned it over to his deputy, Frank Weaver, at Magee, Miss., and efforts were made to collect; that Mr. Weaver had levied on property and that Patrick had given bond for it. His testimony reads as follows: "A. When I received the execution, Frank Weaver, at Magee, did most of my work down there, and I turned it over to Mr. Weaver, and the day before the return day of the execution, we were trying to execute it. Before that Mr. Weaver had levied on property, and Mr. Weaver had levied on some corn and hay down there and Mr. Patrick gave bond for it. Mr. Weaver was handling it for me and he reported it didn't look like he was going to collect it—Jones wasn't worth anything, and Brown had property in Magee he claimed was his homestead and property in Covington County that Brown claimed was under deed. And I got in behind it myself and I went to see Brown in Covington County and he said that was his home and I had better stay off of it. He had property in Covington County and he stayed there about as much as he did here. And we had a talk and I said, 'Brown, you went on that bond and you ought to pay it', and he said, 'I know it, and if you will give me a little time, I want to get some out of Jones, and I will pay it'. And I called Mr. Everett up and said if he would give me a little more time he would do it, and I knew Brown would pay it if I would give him a little time. I didn't know one Everett from the other, and I called Everett Hardware and I told him if he would give me a little time I would get his money. I have other people I have called up and said if they would give me a little time I would get the money and I did."

He further testified as follows:

"Q. Tell the court whether or not there was anything in sight—I mean in the way of property above exemptions—of J. R. Patrick, or W. S. Jones and J. I. Brown. (Objected to, objections overruled.) A. No sir, Mr. Brown had that property, and as I explained, that was not his homestead, but he claimed to me it was his home, and didn't any of them have anything above exemption.

"Q. I will ask you to state this to the court; if you hadn't had the conversation with Mr. Everett, would you have made your returns at the return day, which I believe was in November, the second Monday of November—in November, 1935—would you have done that? A. I would have showed what I returned on, but I was making an effort to get the money.

"Q. And the reason you didn't make the execution, you say Mr. Everett agreed to it? A. Yes. I didn't know which Mr. Everett it was, but I called up Mr. Everett later on, and assured him I would get my hands on the money and he need not worry about the return day, and I called him before the return day.

"Q. Did you have this understanding with him before or after the return date? A. Before. My daughter wrote the letter, but I would have written one just like it. Mr. Weaver was handling it, you see, and he was telling us all the time he would have the money. He was handling it and not me."

The sheriff's daughter testified that she heard the telephone conversations her father had with Mr. Everett in Jackson, but did not know the date and did not understand the other part thereof. She was in the sheriff's office when the conversations took place, but could not give the day of the week or month.

A telephone operator was introduced who searched the files of the telephone company at Magee, and she testified that there were only two calls from the sheriff's office to the appellants, both of which were subsequent to the return date of the execution, one being dated November

26, 1935, and the other December 4, 1935; that she searched the office records for calls through October and November, and that she began to work for the company on November 17, 1935.

A letter from Duckworth to H. L. Austin, an attorney for appellants, dated December 4th, was introduced, reading as follows:

"Dear Mr. Austin;

"In reply to your letter of yesterday. Mr. Everett will advise you, I am sure, of our telephone conversation of last week, when I requested a few more days time on the execution, as I was having to collect same from Mr. J. I. Brown. This I am pleased to advise that I have done to-day and after getting it, I turned the amount over to Mr. J. D. Smith, Chancery Clerk. He in turn, I am sure, will disburse it as it should be done. Hoping this meets with your approval, I am, Very truly yours, D. W. Duckworth."

A letter from D. W. Duckworth to D. A. Everett, dated October 11, 1935, was introduced, reading as follows:

"Dear Mr. Everett;—

"In reply to your letter of recent date, I wish to say that I received the papers in the Patrick case, and the case is not returnable until the second Monday of November. You may rest assured that by that date you will have your money, as same will be ready by return date. Very truly yours, D. W. Duckworth, Sheriff."

A letter from J. M. Guilmette, dated December 24, 1935, to H. L. Austin, was introduced, reading as follows:

"Re. Bond 7136231—File 2746983

"D. W. Duckworth, Sheriff, Simpson Co., Mississippi.

"H. L. Austin, Esq.

"414½ E. Capitol Street,

"Jackson, Mississippi.

"Dear Sir:—

"We have yours of December 20th. The National Surety Corporation assumed liability on the above bond

covering Mr. Duckworth as Sheriff of Simpson County, Mississippi. This bond was issued by the National Surety Company for a term of four years which was effective January 4, 1932. We trust this is the information you are after. Very truly yours, J. M. Guilmette, Public Official Department.''

H. L. Austin, attorney for appellants, testified as follows: ''On November 17, 1935, I was passing through Mendenhall, Mississippi, on my way home. This execution according to the return date, was then past due, and I called up Mr. Duckworth, the Sheriff, and asked him what about this execution and what he had done with it. He stated to me he didn't know anything about it, that his deputy, Mr. Weaver, had been handling it, and that he would get hold of Mr. Weaver, and look into it and let me hear from him. I never heard from him.''

The decree of the chancellor was for the appellees, and was a finding of facts reading as follows: ''The court finds that an execution was duly issued in this cause upon a decree of this court and the said execution was delivered to the sheriff, D. W. Duckworth, of Simpson County, Mississippi; that pending the time between the delivery of the execution to the sheriff, and the term of court to which it was returnable, that the sheriff, D. W. Duckworth, made an effort to make the money from the judgment debtors named in said execution and the sureties on their bond that while so doing that the judgment debtors and the sureties made promises of payment to the sheriff, which promises were by the sheriff communicated to the judgment creditors prior to the return date of the execution, and the court finds from the testimony, that said agreements were by the sheriff communicated to the judgment creditors, and that the judgment creditors assented to the manner in which said execution was delivered, and that, therefore, there is no liability against the sheriff or the surety on his bond for failure to return same on or before the return day of the execution.''

Section 3317, Code 1930, makes a sheriff liable for failure to return an execution on its return day for the amount of the judgment and costs, with 5 per cent. for damages, same to be recovered by motion before the court to which the execution is returnable, and section 3318, Code 1930, reads as follows: ''A sheriff or other officer shall not return an execution or attachment for not performing a decree in chancery to the office whence it issued without noting thereon how he hath executed the same, unless by the express direction, in writing, of the plaintiff, his agents or attorney; and if a sheriff or other officer, not having such directions, shall return such execution or attachment without noting thereon how he hath executed the same, he and his sureties shall be subject to all the liabilities, fines, and penalties imposed on a sheriff for failing to return an execution, recoverable in the same manner. And when any execution shall be settled, or the money due thereon received, wholly or in part, by an officer, he shall make a statement of the amount thereof on the execution, including his own fees and commissions, and return the same with the execution.''

Under this section, it will be seen that a sheriff must return the execution, and how he executed the paper, unless given permission, in writing, to do otherwise, or to hold his execution until after return day. The burden of proof to establish the fact that the judgment creditor directed such withholding of an execution is upon the sheriff, and, if he does not comply with the established method of returning an execution, the burden is upon him to establish, by a preponderance of the evidence, his excuse for such withholding.

In the case at bar the decree finding the facts is not sustained by the evidence. The proof on the part of the sheriff is wholly insufficient to meet this burden. It is clearly established by the proof in this case that the telephone conversations, even if established, are shown to have occurred subsequent to the return day of the

execution, and it is clear that the sheriff is mistaken, no doubt honestly, in the date these conversations occurred. The proof on his part is not only contrary to the overwhelming weight of the evidence, but wholly fails to meet the burden imposed by law upon him.

The judgment of the court below, therefore, will be reversed and judgment rendered here for the amount of the balance of the collection, with 5 per cent. damages from the date of the judgment until this date.

Reversed, and judgment here.